JUDGE LINDSAY
delivered the opinion of the court.
This was a proceeding by rule in the Jefferson County Court to compel the appellant, the Bank of Kentucky, to list for *47 taxation the income derived from United States bonds held and owned by that corporation.
• By an act of the General Assembly, approved March 8, 1867 (1 Sess. Acts, p. 88) it is provided as follows:
“Sec. 1. That it shall be the duty of the assessors of property for taxation for revenue to require of each tax-payer to state on oath what income he or she derives annually from interest paid on bonds issued by the government of the United States owned by said tax-payer, or held by him or her in trust for another, or in any fiduciary capacity; the sums so listed shall be set down in a' separate column under a head “ Income from United States Bonds.
“ Sec. 2. That there is hereby assessed a tax on the gross amount of such income five per cent, which shall be collected by the sheriff or other collecting officer of revenue, who shall account for and pay over the same as other revenue, specifically stating the sum collected from that source, which sum shall be set apart and placed on deposit in any bank on terms as to interest, to be held subject to the future action of the legislature.”
It is conceded that the states have no power to tax the bonds in question eo nomine; but it is insisted that there is a substantia] difference between the bond itself and the annual interest or income accruing upon it. The holder of the bond is entitled to this interest by the reason of his contract with the Federal Government. The bond itself is the evidence of the contract. The interest thereon falling due at stated intervals is as much a part of the government debt as the principal, and the right of the holder of the bond to demand its payment is a right growing out of his contract, as evidenced by the bond and the law of Congress under which it was issued.
To tax this interest as it annually or semi-annually becomes due and payable is in effect to tax the debt of the government, or, in other words, to tax the instrument or means used by it *48 in the execution of its expressly delegated power “ to borrow money on the credit of the United States.”
It is true that when the interest is paid it ceases to constitute a part of the debt, and is then subject to be taxed by the state governments like other property held or owned by their citizens; and it is insisted that because the act quoted does not by its terms necessarily imply an intention to tax the interest accruing on Federal securities until it has been actually received by the tax-payer, it can be enforced without trenching upon any of the rights or exemptions secured to him as the holder of such securities.
It is a sufficient answer to this assumption that the tax imposed on the income or interest received from United States bonds by the act in question is ten times greater than that assessed on moneys received from other sources by the general .laws of the state. If this discrimination can be constitutionally made, it results that it is within the power of the state governments to impose penalties upon their citizens for investing in the securities of the United States, and by means of such penalties to render nugatory the power of that government to borrow money within their respective 'territorial limits.
We are constrained to conclude that the state governments do not possess such a power; and inasmuch as the act under which this proceeding was had, if upheld, will have the effect of taxing the contracts of the United States made in pursuance to the undoubted power of that government to borrow money, it must be regarded as repugnant to the Federal constitution. (Weston v. City of Charleston, 2 Peters, 463; McCulloch v. Bank of Maryland, 4 Wheaton, 318; Bank of Commerce v. New York City, 2 Black. 620.)
This conclusion renders it unnecessary to consider the other questions presented in the argument of the cause.
The order of the county court overruling appellant’s re *49 sponse, and compelling it to assess the income received upon United States bonds, is reversed, and the cause remanded with instructions to discharge the rule.