Burket, J.
The petition is in due and proper form, so that the demurrer is upon the merits of the cause, and not upon the form of the petition.
The taxation of banks and banking associations is regulated in this state by statute, and therefore the custom of banks and banking associations can avail nothing against such public statutes; neither can the acts or official course of procedure of county auditors make lawful that which is in conflict with such statutes. Custom cannot prevail over a statute. If the county auditors have been derelict in their duties, as to the taxation of banks, bankers, banking associations or the stock or shares of such corporations, the proper remedy is, not to still further transgress the law by remitting still other taxes in a vain effort to secure equality, but by bringing all up to the standard of the *269 statute, and thereby securing equality of taxation as near as may be. Wagoner v. Loomis, 37 Ohio St., 571.
The demurrer was therefore properly sustained to the petition in so far as it founds its cause for relief upon the custom of banks, bankers and banking associations, and the acts and course of proceeding of county auditors in conflict with the statutes of the state.
We will next consider the petition as founded upon the ground that the government bonds are non-taxable, under section 3701, Revised Statutes of the United States. This section is in pari materia with section 5219, and both must be read together. They are as follows:
“Section 3701. All stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt irom taxation by or under state or municipal or local authority.”
“Section 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state subject only to the two. restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed.”
Section 5219 was passed long after 3701, and has a modifying influence on the latter. Before the pas *270 sage of 5219 it was held by the supreme court of the United States, in Bank Tax Cases, 2 Wallace, 200, that United States bonds owned and held by a bank must be deducted from the amount of its capital in making its returns for taxation; but afterward it was held by the same court that the value of the bank shares might be fixed upon the whole capital stock including the bank’s investments in government bonds. Van Allen v. The Assessors, 3 Wallace, 573, and many subsequent cases.
So that the holding now is that shares in national banks, and in incorporated state banks, may be taxed at their true value in money including in such value all government bonds owned and held by such bank. People v. The Commissioners, 4 Wallace, 244; Bradley v. The People, 4 Wallace 459; Frazer v. Siebern, 16 Ohio St., 614; section 2762, Revised Statutes of Ohio.
In every respect, except the issuing of bills to circulate as money, state banks carry on a similar business, and operations and investments of a like character as national banks, and it is therefore proper to compare the investments of capital in such banks with capital invested in national bank shares. That capital invested in state banks which do not issue bills, is moneyed capital in the hands of individual citizens as that term is used in said section 5219 is shown in the case of Mercantile Bank v. New York, 121 U. S., 138, where the court in speaking of such banks and the change in said section as amended in 1868, say: “Of course, so far as investments in such banks are moneyed capital in the hands of individuals, they are included in the clause as it now stands.” And being so included, that is being capital which comes directly in competition withcapital invested in national bank shares, it follows that the taxation on national bank shares cannot be greater than upon capital invested in state banks, whether the taxation on state banks be upon their shares or *271 upon their taxable capital. In that case the court say:- “A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their values as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business, and operations and investments of a like character.” See also First National Bank of Garnett v. Ayers, 160 U. S., 660.
It is urged that section 5219 provides only, that the rate, that is the per centum, on the fixed valuation, shall not be higher on national bank shares than on other moneyed capital, and the language used in Van Allen v. The Assessors, 3 Wallace, 573, People v. Commissioners, 4 Wallace, 244, and the holding of this court in .Frazer v. Siebern, 16 Ohio St., 614, would seem to support this view; but when we turn to the later cases of People v. Weaver, 100 U. S., 539, Cummings v. National Bank, 101 U. S., 153, Supervisors v. Stanley, 105 U. S., 305, Boyer v. Boyer, 113 U. S., 689, and Williams v. Supervisors, 122 U. S., 154, we find that it is not only the rate per centum, but also the valuation, so that having the rate and valuation of national bank shares, the same as other moneyed capital, the taxation will be the same, which is the aim and purpose of said section 5219. If the same rate should be preserved and a much higher valuation of such shares allowed, the tax to be paid on such shares would be higher than on other moneyed capital, and that would violate the intention. of the section in question. Section 5219 was materially changed by *272 the amendment of February 10,1868, whereby the provision as to the tax on shares of state banks was omitted, and the restriction that the taxation on national bank shares shall not be at a greater rate than on other moneyed capital, was inserted. As the section now stands it is the taxation and not merely the per cent, that cannot be at a greater rate than on other moneyed capital. To make the taxation the same as on other moneyed capital, it is necessary that both the rate and valuation should be the same. And this rule as to the rate and valuation prevails in this state. In Exchange Bank v. Hines, 3 Ohio St., 1., we find the following on page 15: “Taxing by a uniform rule requires uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing implies equality in the burden of taxation; and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation.” The restriction therefore in said section 5219, to the effect that taxation on national bank shares “shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state,” means that both the rate per centum and the valuation on national bank shares shall not be greater than on other moneyed capital. From this it follows that if the government bonds held by a national bank are included in its return for taxation from which the value of its shares is determined, the same must be done in the returns of incorporated state banks. To allow incorporated state banks to deduct their government bonds from their returns for taxation, and deny that right to national banks, would be to compel the latter to pay greater taxation on the same investment than the former. To prevent such a result was the object of said section 5219. It therefore follows that in order to retain the right to tax national bank shares without deducting the bonds held by the bank from its return, we must in like manner tax *273 tlie shares of incorporated state banks, or else impose a tax of equal amount upon the property of state banks. The case of Van Slyke y. The State, 23 Wis., 655, affirmed in 154 U. S., 581, does not conflict with this conclusion. In that case the tax upon the property of the bank was the full equivalent of a tax upon its shares, and that being so, it could make no difference whether the tax was called a tax on shares, or on the capital, so long as the amount was in the proper sum, and no injustice was done to anyone. The case was affirmed by the supreme court of the United States upon the authority of National Bank v. Commonwealth, 9 Wallace, 353; Lionberger v. Rouse, 9 Wallace, 468, which cases clearly recognize the rule that national bank shares cannot be taxed differently from state banks or their shares as to the amount of the tax.
The doctrine that the capital of a bank is the equivalent of all its shares, upon which the Wisconsin case was decided by the state court, and which happened to be true in that case, has been so often and emphatically repudiated by the supreme court of the United States that it cannot now be successfully relied upon. Owensboro National Bank v. Owensboro, 173 U. S., 664, and cases there cited. It is true, however, that if in any particular case the amount of the taxable capital substantially equals the amount of all the shares, that it matters not whether, as to an incorporated state bank, the tax is upon the capital, or upon the shares, as the tax by either mode would be the same in amount. But as the amount of the taxable capital may be much less than the amount of all- the shares, and always is so where a bank owns and holds non-taxable bonds, the doctrine of taxation of the capital being the equivalent of taxation of all the shares has been repudiated by the supreme court of the United States, and we are bound by those decisions. Our statutes as to taxation *274 of banks and shares in banks, as well as said section 5219, have been revised and changed since the case of Frazer v. Siebern, 16 Ohio St., 614, and the statement in that case that the limitation as to other moneyed capital refers merely to the per centage of tax to be levied, has not been approved by the supreme court of the United States, but has been ruled differently by that court in cases above cited. That case is therefore not an authority as to the force, effect and construction of our present statutes on that subject, nor as to the present restriction in said section 5219, as to the rate of taxation on national bank shares. But as to the proposition that the taxation on national bank shares cannot be greater than the taxation on state banks or their shares, that case is sound.
It is also urged that when section 5219 mentions “other moneyed capital in the hands of individuals,” it means other taxable moneyed capital, and that as federal bonds are not taxable they should be deducted from the return of the bank before fixing the amount from which to ascertain the value of each share, and People v. Commissioners, 4 Wallace, 244, 256, and Mercantile Bank v. New York, 121 U. S., 138, are cited and relied upon. Those cases do say that the phrase means “other taxable moneyed capital.” But conceding that to be the meaning, it does not aid the cause of the plaintiff in error. Certainly the meaning is “taxable capital,” because if it meant nontaxable capital, the shares of national banks could not be taxed at all. And here lies the distinction, the tax is upon the shares, and not upon the capital. If the tax was on the capital, the federal bonds would have to be deducted, but being upon the shares, no such deduction is required, allowed, or authorized. A state has the power to tax both the capital and stock or shares of a corporation, unless prohibited by its constitution, and to do so would not be double tax *275 ation. Owensboro National Bank v. Owensboro, 173 U. S., 664, 681, 682.
It is urged against the Van Allen case, and other like New York cases, that they are not applicable in this state, because New York has no constitutional provisions like ours in reference to taxation. By this is meant that New York was not hindered by such constitutional limitations and restrictions, and was therefore free to pass laws conforming to the principles of'the Van Allen case; while Ohio is so restricted by its constitution as to make it impossible to conform to that case. As the constitution of the United States, and the acts of congress passed in pursuance thereof, are the supreme law of the land, it may well be doubted whether the constitution of a state is of sufficient vigor to serve as an excuse for not conforming to the acts of congress. Should we be unable to conform to section 5219 and the Yan Allen case, Ave would be denied the right to tax national bank shares. Such shares being personal property, are required to be taxed .under the provisions of our constitution; and if the claim of the plaintiff in error is right, in this regard, it would lead to the absurd result, that by reason of our constitution we cannot tax such shares, and by reason of the same instrument we must tax them.
In the case of Lionberger v. Rouse, 9 Wallace, 468, the state of Missouri was bound by a contract with two banks whereby it Avas not able to conform to the Yan Allen case as to those two banks, but it conformed as to all of its other banks, and the supreme court of the United States held that as the state had done all Avithin its power to conform to the laws of the United States, it might tax national bank shares at the same rate as its own banks, other than said two which held such contract; but we know of no case, and none has been cited, wherein a state has been excused from conforming to section 5219 and the Yan Allen ease, by reason of a limitation in its *276 constitution, and still allowed to tax the shares of national banks the same as if it had so conformed. Besides, there is no provision, limitation or restriction in our constitution to prevent us from conforming to the act of congress, and the decisions of the United States supreme court, as will hereinafter appear.
Our constitution has no provision as to non-taxable government bonds, and such bonds having been issued, and national banks thereafter established under acts of congress, with limited power of taxation granted to the states upon the shares of such banks, it became necessary to revise and conform our tax laws to the new order of things under said sections 3701 and 5219, and our own state constitution, to the end that we might exercise the right to tax such national bank shares, and at the same time observe the provisions of our constitution as to equality of taxation. In securing equality of taxation, it must be borne in mind that exact equality is impossible, and that inequalities which cannot be remedied without an infraction of the constitution or acts of congress, are, and of right should be, disregarded.
As unincorporated banks are allowed to deduct their non-taxable bonds from their assets, and incorporated banks are not allowed to make such deductions in fixing the amount upon which the value of the shares is calculated, it is urged that there is an inequality in taxation produced thereby which violates that principle of the constitution which aims at equal taxation. Whether this produces such inequality as calls for a remedy it is impossible to determine. The unincorporated bank pays taxes on all of its property except non-taxable bonds, while the value of the shares of the incorporated bank is based • upon the value in money of the tangible property of the bank, including such bonds, but nothing is added under our statute for the value of the franchise and privilege of carrying on a corporate business. This *277 intangible and untaxed property of the corporation may, and often does, exceed the value of the nontaxable bonds held by unincorporated banks or individuals, and in some'of the states heavy taxes are imposed on such property. The two kinds of banks cannot well be assessed by the same statute, because the unincorporated bank has no shares, no franchise, and no privilege to carry on a corporate business in which there is only a limited liability for the debts of the bank. Both are to be so taxed as to bear a burden equal to that borne by individuals, and the obligation is upon the general assembly to pass laws to that end.
Section four of article thirteen of the constitution, provides that the property of corporations shall be subject to taxation the same as the property of individuals. Section three of article twelve, provides that the general assembly shall provide by law for taxing all the property of banks and bankers, without deduction, so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals.
And section tAvo of article twelve, provides that laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money. Then follows certain exemptions of public property, and of an amount not exceeding two hundred dollars to each individual.
It will be noticed that the property of corporations shall be subject to taxation the same as the property of individuals. This implies that corporations shall be taxed, either by the same methods as individuals, or by separate statutes producing the same result, as in the opinion of the general assembly shall be best. It will further be noticed that banks and bankers shall be taxed upon all their property without deduction, by such laws as will com *278 pel them to bear a burden equal to that imposed upon the property of individuals. This clearly implies that separate statutes are to be passed for the taxation of the property of banks and bankers, because they are taxed without deduction, and a deduction not exceeding two hundred dollars is allowed to individuals. This matter of deductions, if nothing else, makes it necessary to have statutes for the taxation of the property of banks and bankers different from that of individuals.
Section two of article twelve seems to make provision for the passage of laws for the taxation of the property of individuals only, but it is. broad enough in its terms to include the property of banks and bankers and of all other corporations. But as separate provision is made for the taxation of banks and bankers in section three of the same article, and for the taxation of the property of corporations in section four of the next succeeding article, it seems to be thereby clearly indicated that each of those sections should have a distinct force, effect and scope of its own, but in connection with the others, so as to make a harmonious whole. It is conceded by Thurman, J., in Bank v. Hines, 3 Ohio St., 1. 46, that said section three has its separate- force and scope, and it was said by him that there was no absolute necessity for said section four, because without it, section two would have embraced corporations. But it will be noticed that he does not say that with section four in the constitution, section two embraces the same subject. Having been'thought of sufficient importance to be inserted in the constitution by the convention, and adopted by the people, section four must be presumed and held to have an object and force of its own, but in connection with said section two; and that object and scope is to enable the general assembly to pass laws peculiarly suited and fitted for the listing and taxation of the property of corporations, so as to secure taxation on their prop *279 erty the same as on the property of individuals. It was then, as now, well known that in the extensive, scattered and diversified business and interests of corporations it is often difficult to bring upon the tax duplicate the full valuation of their property, and that to secure that end it might be necessary to pass Jaws applicable to corporations and not applicable to individuals. The same is true as to banks and bankers; but both as to corporations and as to banks and bankers, the taxation is restricted so as to be the same as that of individuals, and to thereby prevent oppression. While the courts cannot make tax laws, they can prevent inequality and oppression by enforcing the restrictions of the constitution.
Shortly after the decision of Van Allen v. The Assessors, 3 Wallace, 573, the general assembly of this state enacted statutes conforming to that decision, and providing for the taxation of shares on banks, both state and national, and repealed the statutes taxing the property of such banks. The passage of those statutes was not merely a mode of fixing the taxable value of the property of incorporated banks, but it was providing for the taxation of the shares of such banks. The power of the general assembly to pass laws taxing shares of incorporated banks in the hands of the stockholders is found in that provision of said section two of article twelve which says that laws shall be passed taxing by a uniform rule all* * * stocks, etc.
Having passed a law for the taxation of all shares, that is all stocks of incorporated banks, it repealed the law taxing the capital or property of the bank, so as to conform to the last sentence in section three of the same article, which says, “So that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals.” The shares or stocks in a bank are personal property, and are employed by the owner in banking, and therefore should be taxed the same *280 as the property of individuals. To also tax the property of the bank, less the government bonds owned and held by it, would reduce the dividends to be received by the shareholder or stockholder, and would by such double taxation impose greater burdens upon the property employed in banking than upon the property of individuals.
So as to other corporations, the general assembly could pass laws under section two of article twelve taxing the stocks of the corporation in the hands of its stockholders, and also taxing the property of the corporation, less the non-taxable bonds owned and held by it, but section four of article thirteen steps in and limits and restricts the power so granted by section two of article twelve, by providing that the taxation on the property of corporations shall be the same as on that of individuals. Aside from the limitations and restrictions in said sections three and four, the general assembly might tax both the stocks and property of banks and corporations, less untaxable bonds, without thereby imposing double taxation. Owensboro National Bank v. Owensboro, 173 U. S., 664, 681, 682.
It is because of said limitations that it is provided in section 2746, Revised Statutes, that where the capital stock of a corporation is taxed in the name of the company, that the stock shall not be taxed, and for a like reason that no provision is made for the taxation of the capital of incorporated state banks when the shareholders are taxed' on their shares. The same limitations apply to national banks, but as to them there is the additional restriction contained in section 5219, Revised Statutes of the United States.
Instead of section four of article thirteen of the constitution, by a strained construction overriding the intention of the general assembly in passing the statutes for the listing and valuation of property in the hands of individuals, and making those *281 statutes also applicable to the listing and valuation of the property of corporations against the intention and purpose of the general assembly, that section was inserted into the constitution for the purpose of clearly authorizing the general assembly to pass laws for the taxation of the property of individuals, and different laws for the listing and valuation of the property of corporations, provided, however, that the result should be that the taxation of the property of both should be the same, that is, that the burden of taxation should rest equally upon all property in the state, whether held by individuals or corporations, and leaving the general assembly free to select the methods which in its opinion would best reach that result. The limitations and restrictions in question are as to the result, and not as to the method of taxation. The result must be the same, equality of taxation, but the methods by which such result shall be attained are left to the discretion and sound judgment of the general assembly. The obligation to pass such laws as will secure equality of taxation is by the constitution placed upon the general assembly, as was held by this court as to section twenty-one of article two of the constitution in Dalton v. State, 43 Ohio St., 660.
Whether the taxaation shall be upon the shares of incorporated state, banks or upon their capital, is also left by the constitution to the general assembly, but whichever method is adopted, the law must be so framed that the burden upon the capital invested in the state bank will at least equal the burden placed upon national bank shares. The most convenient manner of accomplishing that result is to tax the shares of both kinds of banks, state and national, by the same sections of the statute, as is now done in this’State. That method having been adopted by the general assembly, the courts have no power to interfere and adopt a different one.
The evident object and purpose of the plaintiff in *282 error is to- so construe our constitution and statutes in connection with said sections 3701 and 5219, Revised Statutes of the United States, as to escape with a less burden of taxation than is paid upon a like amount of investment in national bank shares. This cannot be done. The burden must be equal. The taxation on national bank shares cannot be greater than upon capital invested in state banks by reason of said section 5219, and it cannot be less by reason of section two of article twelve of our constitution.
The statutes of this state providing for the listing and valuation of different classes of property for taxation in and by different modes and agencies, have been held to be constitutional by this court, and by the supreme court of the United States. Wagoner v. Loomis, 37 Ohio St., 571, and Cummings v. National Bank, 101 U. S., 153. The claim of the plaintiff in error that the United States bonds owned and held by it should be deducted from its capital stock before fixing the amount of its resources as a basis for ascertaining the value of each share of its stock, is therefore not tenable. Neither can it be allowed to pay taxes on its capital, less such bonds owned and held by it, and thereby relieve its shareholders from paying taxes on the shares held by them, because there is no statute authorizing the payment of such taxes on its capital stock, and the statute requiring payment of taxes by the shareholders being valid, it cannot be set aside or disregarded by this court. The demurrer to the petition by the court below was therefore properly sustained, and the circuit court was right in affirming the judgment.
Judgment affirmed.